IN THE UNITED STATES DISTRICT COURT FOR
THE DISTRICT OF MARYLAND, NORTHERN DIVISION

ERIEN FRAZIER,

    Plaintiff,

       v.

RJM ACQUISITIONS LLC,

    Defendant.

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

CIVIL NO.: WDQ-14-0047

## MEMORANDUM OPINION

Erien Frazier (the "Plaintiff"), *pro se*, sued RJM Acquisitions LLC ("RJM" or "the Defendant") for violations of the Fair Credit Reporting Act ("FCRA")[1] and related state law claims. Pending are the Defendant's motion for summary judgment and the Plaintiff's motions to file a surreply and an amended complaint. No hearing is necessary. Local Rule 105.6 (D. Md. 2011). For the following reasons, the Defendant's motion for summary judgment will be granted; the other motions will be denied.

---

[1] 15 U.S.C. § 1681 *et seq*.

I.   Background[2]

In August 2002, the Defendant, a debt collector, purchased a delinquent Fingerhut account from Fingerhut.  ECF No. 17-4 (hereinafter "Matte Decl.) at ¶ 3.  Fingerhut communicated to the Defendant that the account was opened by the Plaintiff and provided her last known address.  *Id.* at ¶ 4.  The past due balance on the account was $188.28.  *Id.*; *see also* ECF No. 17-5 (Email from Fingerhut).

To collect on the account, the Defendant used programs by TransUnion and Experian to obtain updates about the Plaintiff's address and contact information.  *Id.* at ¶¶ 5-6.  "[The] Defendant would provide the last known information of the debtor, and the programs would provide address and contact updates."  *Id.* at ¶ 5.  "Each time an address is updated through the TransUnion or Experian programs, a 'soft inquiry' is placed upon the consumer's file within the respective credit bureau's database, letting the consumer know that a creditor has sought [her] contact information . . . ."  *Id.* at ¶ 7.  "Soft inquiries" are only viewable by the consumer; they do not affect

---

[2] The facts are taken from the complaint (ECF No. 1), the Defendant's motion (ECF No. 17), the Plaintiff's opposition (ECF No. 18), the Defendant's reply (ECF No. 21), and their supporting exhibits.  In reviewing a motion for summary judgment, the nonmovant's evidence "is to be believed, and all justifiable inferences are to be drawn in [her] favor." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

credit score calculations, and are not seen by potential creditors looking into the consumer's credit history. *Id.* at ¶ 8.

On March 11, 2011 and February 1 and 10, 2012, the Defendant received contact update reports from TransUnion about the Plaintiff. ECF. No. 18-1 (hereinafter "Frazier Decl.") at ¶ 5. Notices of the soft inquiries were placed on the Plaintiff's consumer file. *See* ECF No. 1-1. "At no time did [the] Defendant access information regarding [the] Plaintiff through any credit reporting agency for any purpose other than collection of the debt owned by [the] Defendant." Matte Decl. at ¶ 9.

On December 18, 2013, the Plaintiff discovered the soft inquiries by the Defendant. *See* ECF No. 17-3 at 4. The Plaintiff emailed the Defendant and asserted that the Plaintiff had no outstanding debt with the Defendant. *Id.*

On January 8, 2014, the Plaintiff, *pro se*, sued the Defendant for violations of the FCRA[3] and state law claims. ECF No. 1. On August 12, 2014, the Defendant moved for summary judgment. ECF No. 17. On August 29, 2014, the Plaintiff

---

[3] In her complaint, the Plaintiff asserted that Count I was under the Fair Debt Collection Practices Act. ECF No. 1 at 2. In her interrogatory responses, the Plaintiff acknowledged that her FDCPA claim was a mistake, and she meant Count I to be under the FCRA. ECF No. 17-3 at 3.

responded.  ECF No. 18.  On September 11, 2014, the Defendant replied.  On December 15, 2014, the Plaintiff moved for leave to file a surreply.  ECF No. 24.  On February 18, 2015, the Plaintiff moved to file an amended complaint.  ECF No. 28.

II.  Analysis

  A. The Plaintiff's Motion to File a Surreply

    Unless otherwise ordered by the Court, a party generally may not file a surreply.  Local Rule 105.2(a).  Leave to file a surreply may be granted when the movant otherwise would be unable to contest matters presented for the first time in the opposing party's reply.  *Khoury v. Meserve*, 268 F. Supp. 2d 600, 605 (D. Md. 2003), *aff'd*, 85 F. App'x 960 (4th Cir. 2004).

    In its reply, the Defendant did not raise a new matter that the Plaintiff needed to address.  In her opposition, the Plaintiff asserted that the declarations attached to the motion for summary judgment were not competent evidence.  *See* ECF No. 18 at 4-6.  The Defendant responded to this argument in its reply.  ECF No. 21 at 1-2.  The Plaintiff's surreply merely restates why the Court should not consider the declarations and reiterates her arguments about the Defendant's improper purpose in using TransUnion's system.  ECF No. 24.  The only new information contained in the surreply is the attachment of the asset purchase agreement between the Defendant and Fingerhut.

4

ECF No. 26.  However, the Plaintiff does not explain why the agreement could not have been attached to her original response. *See* ECF No. 24 at 3.  Further, the agreement does not contradict any of the Defendant's factual assertions--if anything, it only bolsters the Defendant's argument that it purchased the Plaintiff's account from Fingerhut.[4]  Accordingly, the motion for leave to file a surreply will be denied.

 B. The Defendant's Motion for Summary Judgment

  1. Legal Standard

    The Court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).[5]  In considering the motion, the judge's function is "not . . . to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial."  *Anderson,* 477 U.S. at 249.  A dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Id.* at 248.

_____

[4] The Plaintiff argues that because none of her information was on the original agreement, the Defendant cannot show that it purchased her account.  ECF No. 24 at 3.

[5] Rule 56(a), which "carries forward the summary-judgment standard expressed in former subdivision (c)," changed "genuine 'issue' [to] genuine 'dispute,'" and restored the word "'shall' . . . to express the direction to grant summary judgment."  Fed. R. Civ. P. 56 advisory committee's note.

The Court must "view the evidence in the light most favorable to . . . the nonmovant and draw all reasonable inferences in [her] favor," *Dennis v. Columbia Colleton Med. Ctr., Inc.*, 290 F.3d 639, 645 (4th Cir. 2002), but the Court must abide by the "affirmative obligation of the trial judge to prevent factually unsupported claims and defenses from proceeding to trial," *Bouchat v. Balt. Ravens Football Club, Inc.*, 346 F.3d 514, 526 (4th Cir. 2003) (citation and internal quotation marks omitted).

2. The Plaintiff's FCRA Claims

The Plaintiff asserts that the Defendant violated the FCRA by accessing her TransUnion Credit report without a permissible purpose.  ECF No. 1 at 2-3.  The Defendant argues that it is entitled to summary judgment because debt collection is a permissible purpose under the FCRA.  ECF No. 17-1 at 2-4.  The Plaintiff contends that the Defendant never had a debt claim against her, and therefore there was no permissible purpose. ECF No. 18 at 4-6.

"The . . . FCRA . . . was crafted to protect consumers from the transmission of inaccurate information about them, and to establish credit reporting practices that utilize accurate, relevant, and current information in a confidential and responsible manner."  *Guimond v. Trans Union Credit Info.*

6

*Co.,* 45 F.3d 1329, 1333 (9th Cir. 1995) (citations omitted)
(*quoted by Cortez v. Trans Union, LLC,* 617 F.3d 688, 706 (3d
Cir. 2010)).[6]  Section 1681b(a) of the FCRA provides:

> [A]ny consumer reporting agency may furnish a consumer
> report under the following circumstances and no other:
>
>    . . . .
>
>         (3)   To a person which it has reason to believe--
>
>               (A)   intends to use the information in
>                     connection  with  a  credit  transaction
>                     involving  the  consumer  on  whom  the
>                     information  is  to  be  furnished  and
>                     involving  the  extension  of  credit  to,
>                     or  review  or  collection  of  an  account
>                     of,  the  consumer  .  .  .  .

15 U.S.C. § 1681b(a).  The person obtaining or using a consumer

report[7] must have an authorized purpose from § 1681b(a).  *Id.* at

---

[6] "These consumer oriented objectives support a liberal
construction of the FCRA."  *Guimond,* 45 F.3d at 1333.

[7] 15 U.S.C. § 1681a(d)(1) defines a consumer report as
    any written, oral, or other communication of any
    information by a consumer reporting agency bearing on
    a consumer's credit worthiness, credit standing,
    credit capacity, character, general reputation,
    personal characteristics, or mode of living which is
    used or expected to be used or collected in whole or
    in part for the purpose of serving as a factor in
    establishing the consumer's eligibility for--

    (A)   credit or insurance to be used primarily for
          personal, family, or household purposes;

    (B)   employment purposes; or

    (C)   any other purpose authorized under section 1681b of
          this title.

7

§ 161b(f).  It is a plaintiff's burden to "show that [a]
defendant[] had an impermissible purpose in obtaining the credit
report . . . ."  *Korotki v. Attorney Servs. Corp., Inc.*, 931 F.
Supp. 1269, 1276 (D. Md. 1996).

Collection of an outstanding debt is a permissible purpose
under the FCRA.  15 U.S.C. § 1681b(a)(3)(A); *see also Miller v.
Wolpoff & Abramson, LLP*, 309 Fed. App'x 40, 43 (7th Cir. 2009);
*Alston v. Cent. Credit Servs., Inc.*, No. DKC 12-2711, 2013 WL
4543364, at *2 (D. Md. Aug. 26, 2013) ("As applied to a user,
this means that if a user had a reason to believe that a
consumer owed a debt, it would have a permissible purpose to
access the consumer's credit report.").

Here, the undisputed facts show that the Defendant had a
permissible purpose--collection of a debt--in using the
TransUnion database.  The Plaintiff argues that there is a
question of fact about whether the purpose was permissible
because there is no "proof or evidence of any contracts of the
alleged 'account.'"[8]  ECF No. 18 at 4.  The Plaintiff states that
she is "not in possession of any verified evidence of a legal

---

[8] "There is no statement made in the [Defendant's] affidavit as
to what type of alleged 'account' (i.e. demand deposit, asset,
credit, etc.) the Defendant is referring to as being acquired by
RJM which could give them any permissible purpose to pull the
credit report of [the] Plaintiff."  ECF No. 18 at 4.

contract indicating that [she] owe[s] RJM Acquisitions any alleged debt." Frazier Decl. at ¶ 1.

The Plaintiff's conclusionary comments that she is not in possession of absolute proof that the Defendant had her Fingerhut account does not create a dispute of material fact. The Defendant provided a declaration[9] and the email from Fingerhut showing that it purchased the Fingerhut account and believed the Plaintiff had an outstanding debt. *See* ECF Nos. 17-3, 17-4. The Plaintiff has cited no evidence on the record-- other than her conclusion that no evidence exists--contradicting these facts. *See* ECF No. 18-1.

---

[9] The Plaintiff argues that the Court should not credit the declaration by Scotte Matte, the Defendant's president, because it is hearsay and consists of conclusionary statements. ECF No. 18 at 6. Matte represented that his statements in the declaration were based on his review of the Defendant's files, "including reviewing collection notes related to the debt [the] Defendant attempted to collect from [the] Plaintiff. The collection notes were kept in the regular course of business, and were prepared contemporaneously with the events described. The notes reflect a complete account of the actions taken with regard to the debt . . . ." Matte Decl. ¶ 2. Accordingly, the declaration fulfills the requirements of Fed. R. Civ. P. 56(c)(4); *cf. Alston*, 2013 WL 4543364, at *3 ("The undisputed facts, however, indicate that CCS pulled Plaintiff's credit report in furtherance of collecting on a debt that CCS believed Plaintiff owed, which is a valid purpose under Section 1681b (a)(3)(A). Specifically, *Defendant submitted an affidavit from CCS's Executive Vice President, confirming that RBS placed Plaintiff's account with CCS for collection on April 4, 2011* and that '[a]t the time of the placement of the Account, it was represented that the Account was in default and that a balance of $15,656.37 was valid, due and owing by Plaintiff.'") (citation omitted and emphasis added).

Further, even if the debt did not exist, the Defendant would still have a permissible purpose in obtaining the information.  As long as the Defendant had "reason to believe" that it held the Plaintiff's outstanding debt, it did not violate the FCRA, even if the belief was mistaken.  *See Korotki*, 931 F. Supp. at 1276.  The email and the declaration show that the Defendant had reason to believe a debt existed, even if the Plaintiff is correct that the debt did not exist, there is nothing on the record showing the Defendant's bad faith.[10]

Accordingly, the Court will grant the Defendant's motion for summary judgment.

3. The Plaintiff's State Law Claims

In the complaint, the Plaintiff also asserted that the Defendant's actions violated Maryland Consumer Credit Reporting Agencies Act ("CCRAA").[11]  ECF No. 1 at 3-4.

---

[10] *See Alston*, 2013 WL 4543364, at *3 ("Plaintiff contests the debt to RBS, but offers no evidence to establish that CCS accessed her credit report in bad faith, or for reasons other than in an attempt to collect on a debt it had reason to believe Plaintiff owed.  The validity of Plaintiff's indebtedness to RBS is immaterial to *Korotki's* 'reason to believe' standard; by its own terms, 'reason to believe' implies that there may be instances where a debt turns out not to be valid. CCS did not need ironclad proof of Plaintiff's debt to RBS to satisfy the permissible purpose requirement.")

[11] Md. Code Com. Law. § 14-1201, *et seq.*

The CCRAA is "virtually identical" to the FCRA. *Korotki*, 931 F. Supp. at 1280. "[R]elief under the state statute precisely parallels that under FCRA . . . ." *Ausherman v. Bank of America Corp.*, 352 F.3d 896, 900 (4th Cir. 20013); *see also* Md. Code Com. Law. § 14-1202(a)(3)(i) (stating that debt collection is a permissible purpose). Accordingly, the Defendant is entitled to summary judgment on the state law claims for the same reasons that the Plaintiff's FCRA claims fail. *See Korotki,* 931 F. Supp. at 1280 ("Because the FCRA and the CCRAA are virtually identical, this Court concludes that defendants violated neither statute.").

C. The Plaintiff's Motion to File an Amended Complaint

On February 18, 2015, the Plaintiff moved to file an amended complaint. ECF No. 28. The Amended complaint contains no new factual allegations. For the reasons stated above, the amended complaint would be futile.[12] Accordingly, the Court will deny the Plaintiff's motion.

---

[12] Federal Rule of Civil Procedure 15(a)(2) instructs that leave to amend should be freely given when justice requires. Leave should be denied only when amendment would unduly prejudice the opposing party, amount to futility, or reward the movant's bad faith. *Steinburg v. Chesterfield Cnty. Planning Comm'n*, 527 F.3d 377, 390 (4th Cir. 2008); *Equal Rights Ctr. v. Niles Bolton Associates*, 602 F.3d 597, 603 (4th Cir. 2010).

III. Conclusion

For the reasons stated above, the Plaintiff's motions will be denied; the Defendant's motion for summary judgment will be granted.

_____2/24/15_____
Date

_____
William D. Quarles, Jr.
United States District Judge

12